## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE
c/o One Battery Park Plaza
4th Floor (IRAP)
New York, N.Y. 10004,

                                 Plaintiff,

         – *versus* –

UNITED STATES OF AMERICA
Serve to:
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Civil Process Clerk
U.S. Attorney's Office
555 4th Street, NW
Washington, D.C. 20530,
               and
U.S. DEPARTMENT OF STATE
2201 C Street, NW
Washington, D.C. 20520,

                         Defendants.

**Case No.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      In 2009, Congress enacted the Afghan Allies Protection Act to enable certain Afghan nationals who worked on behalf of the U.S. government in Afghanistan to immigrate to the United States with their families through a special pathway commonly known as the Afghan special immigrant visa (or "SIV") program.  In the years since, as Afghans have continued to support the United States at great personal risk, Congress has directed the Executive branch to facilitate the immigration to the United States of thousands of Afghan allies and created additional procedural protections for applicants.  The Executive's administration of the program, however, has undercut the Act's promise:  violating the Act and other federal law, the Executive has prevented deserving applicants like Plaintiff from pursuing their cases.

2.      Plaintiff John Doe[1] is an Afghan civil engineer who worked on behalf of the U.S. government in Afghanistan.  Facing threats to his life because of this work, he seeks to immigrate to the United States with his family through the pathway that Congress created for Afghan allies.

3.      In 2016, following agency guidance, Mr. Doe filed an application with the government seeking the first necessary approval for the Afghan SIV program:  a finding that he was in fact eligible for the program and could proceed to the next stage of the immigration process.  In 2018, the government granted that approval, called Chief of Mission (or "COM") approval, based in part on Mr. Doe's submission of a supportive letter of recommendation from a U.S. citizen supervisor—an application requirement.  The government confirmed the authenticity of the letter directly with that U.S. citizen supervisor before granting COM approval.

---

[1] Plaintiff has been granted leave to use this pseudonym.  On June 23, 2021, Plaintiff submitted a version of this complaint that used a different proposed pseudonym.

4.      Mr. Doe's plans to immigrate to the United States were upended in 2020 when an insurgent group affiliated with the Taliban kidnapped the supervisor.  The kidnapping was known to the government and widely reported in the media.   Soon thereafter, claiming that the supervisor's letter was no longer valid because the government could not reverify the letter with him, the government withdrew COM approval and prevented Mr. Doe from continuing with his application.  Mr. Doe's supervisor remains captive; the government is offering an award of up to $5 million for information leading to his return.

5.      The government's withdrawal of COM approval and the policies on which the government relied were unlawful under the Afghan Allies Protection Act and the Administrative Procedure Act.  Mr. Doe therefore seeks an order declaring this withdrawal of COM approval and these policies unlawful and setting them aside.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants include a federal agency that is a resident of the District of Columbia, and because a substantial part of the events or omissions giving rise to the Complaint occurred within the District of Columbia.

## THE PARTIES

8.      Plaintiff John Doe is an Afghan national and civil engineer who managed numerous sensitive construction projects on behalf of the U.S. government in Afghanistan over several years.

9.      Facing threats from the Taliban and other insurgent groups because of his work for the United States, Mr. Doe applied to immigrate to the United States through the Afghan SIV program.  His aim was, and continues to be, to safely relocate here with his family.  Yet because

of the U.S. government's actions, he has been prevented from pursuing his application even as he continues to face danger because of his association with this country.

10.     Defendant the United States of America acts through its agents, including but not limited to the U.S. Department of State; the U.S. Chief of Mission based at the U.S. Embassy in Kabul, Afghanistan, Chargé d'Affaires Ross Wilson; and the designee of the U.S. Chief of Mission under section 602(b)(2)(D) of the Afghan Allies Protection Act, Deputy Chief of Mission Ian J. McCary.

11.     Defendant the U.S. Department of State ("State Department") is an executive agency of the United States responsible for the administration of the Afghan SIV program, including the COM approval process, pursuant to the Afghan Allies Protection Act.

## FACTUAL BACKGROUND

### Afghan Allies Protection Act

12.     The Afghan Allies Protection Act creates a pathway for certain Afghans who have experienced threats because of their work in Afghanistan on behalf of the U.S. government to immigrate permanently to the United States or, if already located in the United States, to adjust their immigration status to become lawful permanent residents.

13.     As relevant here, to be eligible for the program, a person must be a citizen or national of Afghanistan; have worked for at least two years on behalf of the U.S. government; have provided "faithful and valuable service" in qualifying employment that is "documented in a positive recommendation or evaluation . . . from the employee's senior supervisor or the person currently occupying that position, or a more senior person"; and have experienced or be experiencing an ongoing serious threat due to their work for the U.S. government.  Afghan Allies Protection Act of 2009 ("AAPA") § 602(b)(2)(A), *codified at* 8 U.S.C. § 1101 note.

14.     The government has constructed a process for immigration under the Act that consists of four major stages.

15.     To immigrate under the Act, a person must first apply for and be granted approval from the Chief of Mission designee at the U.S. Embassy in Kabul, Afghanistan.  COM approval confirms the applicant's eligibility for the Afghan SIV program and authorizes the applicant to proceed to the next stage.

16.     The COM approval process derives from section 602(b)(2)(D) of the Act.

17.     The Act provides generally that the applicant's faithful and valuable service must be documented by a supervisor's letter of recommendation.  *See* AAPA § 602(b)(2)(A)(iii).  The subsection pertaining to COM approval provides that this supervisor's letter, in turn, must be "accompanied by approval from the appropriate Chief of Mission, or the designee of the appropriate Chief of Mission."  *Id.* § 602(b)(2)(D)(i).

18.     In considering an application for COM approval, the Chief of Mission or their designee must "conduct a risk assessment of the alien" to establish the threat faced by the applicant due to their association with the U.S. government, as well as "an independent review of records maintained by the United States Government or hiring organization or entity to confirm employment and faithful and valuable service to the United States Government."  AAPA § 602(b)(2)(D)(i);  *see also*  6  USCIS  Policy  Manual,  pt.  H,  ch.  9,  § D, https://www.uscis.gov/policy-manual/volume-6-part-h-chapter-9.

19.     Should the Chief of Mission or their designee deny COM approval, they must provide "a written decision that provides, to the maximum extent feasible, information describing the basis for the denial, including the facts and inferences underlying the individual determination."  AAPA § 602(b)(2)(D)(ii)(I)(aa).

20.     Applicants are entitled to "one written appeal" upon denial of COM approval.  This appeal "may request reopening of such decision and provide additional information, clarify existing information, or explain any unfavorable information."  AAPA § 602(b)(2)(D)(ii)(I)(bb)(BB).

21.     Once a person obtains COM approval, they must petition U.S. Citizenship and Immigration Services, a sub-agency of the U.S. Department of Homeland Security, for special immigrant classification—the second stage of the process.

22.     Next, and third, the person must apply to the State Department for a special immigrant visa and be granted such a visa.

23.     Finally, they must be admitted to the United States by U.S. Customs and Border Protection, another sub-agency of the U.S. Department of Homeland Security, at which point they become a U.S. lawful permanent resident.

24.     For the small minority of people who apply to the program from within the United States, stages three and four are replaced by applications to U.S. Citizenship and Immigration Services to adjust an applicant's status to that of a U.S. lawful permanent resident.

**Defendants' Implementation of the Chief of Mission Approval Process**

25.     Defendants set guidelines for applications for COM approval.

26.     The guidelines specify the documents applicants must submit to be considered for COM approval as well as documents applicants may not submit.

27.     Among other things, applicants must submit a letter of recommendation from a supervisor attesting to the applicant's faithful and valuable service.

28.     The guidelines require any letter of recommendation to be signed by a direct U.S. citizen supervisor who knew the applicant personally, or otherwise co-signed by a U.S. citizen

who is responsible for the government contract.  Any U.S. citizen co-signer must confirm the substance of the letter and assert that the applicant is not a national security threat.

29.     In addition to specifying the documents applicants must submit and in what form, the guidelines prohibit applicants from submitting any additional documents unless specifically asked to do so.  Defendants refuse to consider any such additional documents in deciding an application for COM approval.

30.     Applications are accepted by email only, at an address staffed by the State Department through its National Visa Center.

31.     Once National Visa Center staff determine that the application is complete, they transmit the application to other State Department staff in Washington, D.C. for review.

32.     Those staff make a recommendation to a five-member COM Committee.

33.     The COM Committee, in turn, makes recommendations to the Chief of Mission designee—the Deputy Chief of Mission—for a final determination.

34.     Should the applicant be denied COM approval and "appeal" the negative decision, that challenge is handled by the same decisionmakers and in the same manner as the initial application.  In other words, the "appeal" is more akin to a request for reconsideration.

35.     Defendants adjudicate applications for COM approval according to a set of written guidelines.

36.     As part of the adjudication process, Defendants attempt to verify letters of recommendation with their authors.

37.     If Defendants are unable to verify the authenticity of a letter with its author—for any reason, including because the author has since died or is otherwise unavailable or unresponsive—they deem the letter of recommendation invalid.

38.     If Defendants deem a letter invalid, absent a finding of eligibility on the basis of another letter of recommendation, Defendants deny COM approval.

39.     From time to time after the applicant has proceeded to later stages of the Afghan SIV process, Defendants withdraw COM approval.

40.     In deciding whether to withdraw approval, Defendants follow the same guidelines as they do for initial adjudications.

41.     As part of this withdrawal process, Defendants attempt to reverify letters of recommendation with their authors.

42.     If Defendants are unable to reverify the authenticity of a letter with its author—for any reason, including because the author has since died or is otherwise unavailable or unresponsive—they deem the letter of recommendation invalid.

43.     If Defendants deem a letter invalid, absent a finding of eligibility on the basis of another letter of recommendation, they withdraw COM approval.

### Plaintiff's Application for and Receipt of Chief of Mission Approval

44.     Mr. Doe filed an application for COM approval in December 2016.

45.     Mr. Doe based his application on employment with a U.S. government prime contractor, as well as separate employment with another company that was a U.S. government subcontractor.

46.     In support of his application, Mr. Doe submitted, among other things, a letter of recommendation from his supervisor at the prime contractor, Mark Randall Frerichs, with whom he worked closely for several years.

47.     Frerichs is a U.S. citizen and Navy veteran.

48.     Frerichs was Mr. Doe's only direct U.S. citizen supervisor at the prime contractor and the only U.S. citizen available to sign or co-sign a letter of recommendation on his behalf.

49.     On June 15, 2017, Defendants assigned Mr. Doe's case a Chief of Mission case number.

50.     On October 11, 2017, Defendants confirmed that they "had received all necessary documents for [Mr. Doe's] Chief of Mission application."

51.     Defendants cautioned, however, "[T]he National Visa Center is required to verify your letter of recommendation with your supervisor.  Once that process has completed, we will notify you with additional instructions."

52.     On or around November 17, 2017, Defendants confirmed the authenticity of Frerichs' letter of recommendation for Mr. Doe with Frerichs.

53.     On November 17, 2017, Defendants notified Mr. Doe that his documents were under review at the U.S. Embassy in Kabul, Afghanistan.

54.     In the spring of 2018, in the face of escalating violence and threats targeting Mr. Doe and his family due to his association with the U.S. government, Mr. Doe and his family went into hiding in Afghanistan.  Soon thereafter, they fled to India.

55.     On or around December 4, 2018, Defendants granted Mr. Doe COM approval, confirming his eligibility for the Afghan SIV program and authorizing him to petition for special immigrant classification.

56.     The approval letter explained that the U.S. Embassy in Kabul, Afghanistan had confirmed that Mr. Doe is a national of Afghanistan, had been employed on behalf of the U.S. government for not less than two years, provided faithful and valuable service to the U.S. government, and had experienced or was experiencing an ongoing serious threat because of his employment on behalf of the U.S. government.

57.     Based on these findings, Defendants authorized Mr. Doe to submit a petition for special immigrant classification to U.S. Citizenship and Immigration Services, the next stage of the SIV process.

**Defendants' Withdrawal of Chief of Mission Approval**

58.     A few weeks after receiving COM approval, Mr. Doe filed a petition for special immigrant classification on behalf of himself, his wife, and his four children.

59.     U.S. Citizenship and Immigration Services conditionally approved his petition, contingent on later verification of his signature and identity, in February 2019.

60.     Proceeding to the next stage of the SIV process, Mr. Doe applied to the State Department for a special immigrant visa.   The State Department confirmed receipt of his application in April 2019.

61.     In June 2019, Mr. Doe and his family appeared for an interview with a consular officer at the Immigrant Visa Unit of the U.S. Embassy in New Delhi, India.

62.     Following the interview, the consular officer notified Mr. Doe that his case had been placed in administrative processing.

63.     Administrative processing is a State Department screening stage to which all Afghan SIV applicants are subjected.  At this stage, the State Department determines whether any general grounds of inadmissibility under the immigration laws, such as security or medical grounds, apply.

64.     Once administrative processing is completed, the applicant may be issued a visa.

65.     In or around late January or early February 2020, Mr. Doe's former supervisor Mark Frerichs was kidnapped in Afghanistan by the Haqqani network, an insurgent group linked to the Taliban.

66.    News outlets including *Newsweek* and the *Chicago Tribune* reported on the kidnapping soon thereafter.  *See* James Laporta et al., *Exclusive: U.S. Citizen Kidnapped by Taliban Group in Afghanistan*, Newsweek (Feb. 5, 2020, 8:23 PM), https://www.newsweek.com/exclusive-us-citizen-kidnapped-afghanistan-1485439; Eric Tucker, *Lombard Man Kidnapped by Taliban-Linked Group in Afghanistan, Official Says*, Chicago Tribune (Feb. 6, 2020, 1:53 PM), https://www.chicagotribune.com/news/breaking/ct-american-mark-frerichs-kidnapped-afghanistan-20200206-zhtam3khpzgqloq7te6s6axgre-story.html.

67.    By early February 2020, the State Department, the Department of Defense, and the Federal Bureau of Investigation were actively involved in efforts to locate and recover Frerichs. These efforts included at least one operation of the Naval Special Warfare Development Group, as well as work to track cellphone signals of Frerichs and his captors.

68.    Frerichs remains captive and Defendants are offering an award of up to $5 million for information leading to his return.  *See Kidnappings/Missing Persons:  Mark Randall Frerichs*, Federal Bureau of Investigation, https://www.fbi.gov/wanted/kidnap/mark-randall-frerichs (last visited June 23, 2021).

69.    On March 12, 2020, Mr. Doe received an email attaching a new letter from the Chief of Mission designee.

70.    The letter, dated March 9, 2020, explained:  "You were previously granted Chief of Mission (COM) approval to access the Special Immigrant Visa (SIV) Program.  We regret to inform you that the Chief of Mission withdrew support for your SIV because new information has come to our attention, as specified below:  Lack of sufficient documents to make a determination."

71.    The letter continued, "You did not provide a valid letter of recommendation with your application."

72.     The letter provided no other ground for Defendants' withdrawal of COM approval.

73.     Defendants concluded that the letter of recommendation from Frerichs was invalid because they were unable to reverify the letter with Frerichs.

74.     In concluding that the letter was invalid, Defendants failed to conduct an independent review of records maintained by the U.S. government that demonstrated the letter's validity.  These records included, among other things, records of Frerichs' prior verification of the letter, records of Frerichs' current whereabouts, and records demonstrating that Frerichs and Mr. Doe worked alongside each other.

75.     In June 2020, Mr. Doe "appealed" the withdrawal of his COM approval administratively.

76.     Mr. Doe contended that the letter of recommendation provided by Frerichs was valid.  Mr. Doe pointed out that Defendants had already verified the letter with Frerichs.  In addition, Mr. Doe provided additional evidence of his association with Frerichs and Frerichs' support of his application.  This included evidence that Mr. Doe and Frerich had worked closely together and that Frerichs had personally vowed in writing to "do what I can to assist" Mr. Doe in the Afghan SIV process.

77.     Mr. Doe also contended that, even setting aside his employment with the prime contractor, his employment with the subcontractor—for which another U.S. citizen supervisor had confirmed faithful and valuable service—sufficed for COM approval.

78.     In a letter dated November 30, 2020, the Chief of Mission informed Mr. Doe that his appeal was denied on account of "Lack of Qualifying employment by or on behalf of the USG or by ISAF/RS" and "Insufficient Length of employment."

79.     It continued, "For your initial period of employment, you did not submit a valid letter of recommendation.  For your second period of employment, your employer had a contract or subcontract with the U.S. government, but the contract or subcontract was for less than two years and does not appear to be during your period of employment.  You do not meet the requirement of at least two years of employment by or on behalf of the U.S. government, and you have not established that you were employed by or on behalf of the U.S. government."

80.     The letter provided, further, "There is no further appeal of this decision," and instructed that any new application "should provide new evidence."

81.     Defendants upheld their withdrawal of COM approval because they were unable to reverify Frerichs' letter of recommendation with Frerichs, who had been kidnapped.

82.     In concluding that the letter from Frerichs was invalid, Defendants failed to conduct an independent review of the records maintained by the U.S. government or to consider documents submitted by Mr. Doe that demonstrated Mr. Doe's relationship with Frerichs and the validity of the letter.

83.     Regarding Mr. Doe's second period of employment, Defendants failed to conduct an independent review of the records maintained by the U.S. government demonstrating that Mr. Doe's work on behalf of the U.S. government through his second employer spanned the requisite two years.

84.     The explanation in the November 30, 2020 letter was the first to acknowledge Mr. Doe's two periods of employment or to raise any concerns with documentation of contracts or subcontracts for Mr. Doe to potentially address.

85.     On no occasion in their COM adjudications have Defendants identified or cited any derogatory information pertaining to Mr. Doe.

86.     Because Defendants have withdrawn COM approval, Mr. Doe is unable to proceed any further with his application to immigrate to the United States under the Afghan SIV program.

## FIRST CLAIM FOR RELIEF
### (Administrative Procedure Act, Withdrawal of Chief of Mission Approval)

87.     The foregoing allegations are repeated and realleged as though fully set forth herein.

88.     Defendants' withdrawal of COM approval, including their decision to uphold that withdrawal, is final agency action subject to judicial review.  *See* 5 U.S.C. § 704.

89.     The Administrative Procedure Act ("APA") provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).

90.     Defendants' withdrawal of COM approval after Mr. Doe's supportive supervisor was kidnapped by an insurgent group was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

91.     Defendants' withdrawal of COM approval and the findings and conclusions therein therefore must be held unlawful and set aside.  *See* 5 U.S.C. §§ 704, 706(2).

## SECOND CLAIM FOR RELIEF
### (Administrative Procedure Act, Afghan Allies Protection Act, Withdrawal of Chief of Mission Approval)

92.     The foregoing allegations are repeated and realleged as though fully set forth herein.

93.     Defendants' withdrawal of COM approval, including their decision to uphold that withdrawal, is final agency action subject to judicial review.  *See* 5 U.S.C. § 704.

94.     The APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

95.     The Afghan Allies Protection Act requires the Chief of Mission to "conduct . . . an independent review of records maintained by the United States Government or hiring organization or entity to confirm employment and faithful and valuable service."  AAPA § 602(b)(2)(D)(i).  It further provides that any notice of denial of COM approval must "provide[], to the maximum extent feasible, information describing the basis for the denial, including the facts and inferences underlying the individual determination."  *Id.* § 602(b)(2)(D)(ii)(I)(aa).

96.     In withdrawing Mr. Doe's COM approval, Defendants failed to conduct the requisite review of records and failed to provide information describing the basis for their withdrawal of COM approval to the maximum extent feasible.

97.     Defendants' withdrawal of COM approval and the findings and conclusions therein therefore must be held unlawful and set aside.  *See* 5 U.S.C. §§ 704, 706(2).

## THIRD CLAIM FOR RELIEF
### (Administrative Procedure Act, Afghan Allies Protection Act, Reverification Policy)

98.     The foregoing allegations are repeated and realleged as though fully set forth herein.

99.     It is Defendants' policy to withdraw COM approval when a supportive supervisor fails to reverify a letter of recommendation that the supervisor has previously verified ("Reverification Policy").

100.     The Reverification Policy is final agency action subject to judicial review.  *See* 5 U.S.C. § 704.

101.    The APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).  The APA requires agency action that is substantive (or "legislative") in nature to follow notice and comment procedures.  *See* 5 U.S.C. §§ 553; 706(2)(D).

102.    The Reverification Policy is ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and an invalid legislative rule for which Defendants failed to observe the required procedures.

103.    The Reverification Policy and Defendants' withdrawal of COM approval, which was premised on that policy, therefore must be held unlawful and set aside.  *See* 5 U.S.C. § 706(2).

**FOURTH CLAIM FOR RELIEF**
**(Administrative Procedure Act, Afghan Allies Protection Act, Citizenship Policy)**

104.    The foregoing allegations are repeated and realleged as though fully set forth herein.

105.    Defendants require applicants to submit letters of recommendation that are signed or co-signed by U.S. citizens according to prescribed guidelines ("Citizenship Policy").

106.    Absent the Citizenship Policy, Mr. Doe would have been able to furnish a new letter from a supervisor attesting to his faithful and valuable service while working for the prime contractor.

107.    The Citizenship Policy is final agency action subject to judicial review.  *See* 5 U.S.C. § 704.

108.    The APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law."" 5 U.S.C. § 706(2).  The APA requires agency action that is substantive (or "legislative") in nature to follow notice and comment procedures.  *See* 5 U.S.C. §§ 553; 706(2)(D).

109.     Under the Afghan Allies Protection Act, an applicant may establish their faithful and valuable service with a positive recommendation "from [their] senior supervisor . . . , or a more senior person."  AAPA § 602(b)(2)(A)(iii).

110.     The Citizenship Policy is ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and an invalid legislative rule for which Defendants failed to observe the required procedures.

111.     The Citizenship Policy and Defendants' withdrawal of COM approval, which was premised on that policy, therefore must be held unlawful and set aside.  *See* 5 U.S.C. § 706(2).

**FIFTH CLAIM FOR RELIEF**
**(Administrative Procedure Act, Afghan Allies Protection Act, Documents Policy)**

112.     The foregoing allegations are repeated and realleged as though fully set forth herein.

113.     Defendants direct applicants not to submit any supporting documents not specifically requested and refuse to consider any such documents ("Documents Policy").

114.     The Documents Policy is final agency action subject to judicial review.  *See* 5 U.S.C. § 704.

115.     The APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law."

5 U.S.C. § 706(2).  The APA requires agency action that is substantive (or "legislative") in nature to follow notice and comment procedures.  *See* 5 U.S.C. §§ 553; 706(2)(D).

116.    The Documents Policy is ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and an invalid legislative rule for which Defendants failed to observe the required procedures.

117.    The Documents Policy and Defendants' withdrawal of COM approval, which was premised on that policy, therefore must be held unlawful and set aside.  *See* 5 U.S.C. § 706(2).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Declare that Defendants' withdrawal of COM approval, the Reverification Policy, the Citizenship Policy, and the Documents Policy are unlawful, *see also* 28 U.S.C. § 2201;

2.    Vacate Defendants' withdrawal of COM approval, the Reverification Policy, the Citizenship Policy, and the Documents Policy;

3.    Enjoin Defendants from continuing to apply the Reverification Policy, the Citizenship Policy, and the Documents Policy;

4.    Award attorneys' fees and costs pursuant to 28 U.S.C. § 2412, and any other applicable statute or regulation; and

5.    Award such other and further relief that the Court may deem just, equitable, and proper.

Dated:  June 25, 2021

Respectfully submitted,

/s/ Kathryn Austin
Kathryn Austin (D.D.C. Bar No. NY0331)
Deepa Alagesan (D.D.C. Bar No. NY0261)
Lamya Agarwala*
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
One Battery Park Plaza
4th Floor (IRAP)
New York, New York 10004
Telephone: (516) 296-0688
kaustin@refugeerights.org
dalagesan@refugeerights.org
lagarwala@refugeerights.org
mhirose@refugeerights.org

*Attorneys for Plaintiff*

On the pleading:  Alexandra Zaretsky**

* Application for admission pending.
** Not admitted to practice law.  Application for
admission to New York bar pending.